UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMY LIEW,

    Plaintiff,

v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 15-cv-1577 (TSC)

## MEMORANDUM OPINION

Plaintiff Amy Liew brings this suit for racial discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 and the District of Columbia Human Rights Act. (Compl. ¶¶ 8, 12, 16-17). Defendant District of Columbia has moved for summary judgment. (ECF No. 14). For reasons set forth below, the court will GRANT the District's motion.

## I. FACTUAL BACKGROUND

Liew, who is of Asian descent, began working for the District of Columbia Department of Motor Vehicles ("DMV") on April 7, 2014 as a probationary Legal Instrument Examiner, responsible for responding to customer inquiries, examining documents and processing transactions. (Compl. ¶ 4; Defs. Ex. 3, Cobb Decl. ¶ 7; Defs. Ex. 1). Liew alleges that during her employment, her managers and some of her co-workers treated her "unfairly," spoke to her "rudely in a negative tone," and acted as if she was a child. (Pls. Ex. 1, Liew Aff. p. 1). She surmised that this treatment resulted from her ability to multi-task and her efforts to show kindness to customers. (*Id*.) She also overhead an assistant manager, a supervisor and another

employee discussing the fact that she obtained her job without having to participate in a panel interview in a tone that suggested they were "upset and a bit jealous." (*Id.*)

The DMV's tardiness and absence policy requires employees to arrive on time for their shifts. (ECF No. 14-1, Defs. Statement of Undisputed Facts. #4 (hereinafter "SOF")). According to DMV service center manager Rakonda Cobb, if an employee arrives late for work on an isolated occasion, he or she will be charged with unscheduled annual leave, but an employee (particularly a probationary employee) who establishes a pattern of tardiness presents a problem that Cobb will "address"—even when the employee calls ahead to notify the DMV of the anticipated tardiness. (Cobb Decl. ¶ 6). Consequently, failure to receive advance approval for a late arrival can result in the employee being charged absent without leave (AWOL). (SOF # 5).

According to the DMV, on September 16, 2014, at Cobb's direction, a supervisor spoke to Liew about three prior tardiness events and warned her that further incidents would result in her being charged AWOL. (Cobb Decl. ¶ 9; Defs. Ex. 4). Several months later, on November 12, 2014, Liew arrived 7 minutes late and was charged AWOL, resulting in an hour's loss of pay. (Defs. Ex. 2, Bates # 659, 660).

Two days later, on November 14, 2014, Thomas Gaymon, an African-American co-worker (whom Liew "believes" is friends with her supervisors), started to "make fun of Liew" and make negative comments about her race. (Compl. ¶¶ 8, 12). When she protested, he threatened to "punch her in the face" and "beat her up" after work. (*Id.* ¶¶ 8-9). Liew claims that although she immediately reported the incident to the Human Resources Department, they "did nothing" and, likewise, neither did the agency director or her two supervisors (both of

whom are African-American). (*Id*. ¶¶ 9-10). Liew asserts she again reported the incident the next business day, at which time the agency director moved Gaymon to what Liew describes as "a different branch," (*id*. ¶¶ 10-12), although it appears that he was relocated to a building in a different part of the city. (*See* Defs. Exs. 1, 9).

Liew alleges that after this incident, her supervisors began treating her differently by "targeting" her for tardiness and marking her AWOL when she was "a minute or two late," but they did not treat other employees in the same manner. (Liew Aff. p.1). Liew was subsequently charged AWOL for tardiness on December 4, 2014 (three minutes late), December 9 (four hours late), December 13 (unclear how late),[1] and January 16, 2015 (four minutes late). (Cobb Decl. ¶ 11; Defs. Ex. 2, Bates # 661 – 671).

After Liew arrived one minute late on January 22, the DMV placed a letter in her file, described as a "follow-up" to her conversation earlier in the day with a supervisor. (Defs. Ex. 12). In the letter, the supervisor chastised Liew for her continuing tardiness and noted it had been suggested on three separate occasions that Liew adjust her report time, but she had refused. (*Id*.) Finally, the supervisor reminded Liew that her "tour of duty" began at 8:00 a.m. and that she should plan to arrive prior to that time each day. (*Id*.) According to the DMV, the following day, January 23, Liew again arrived late.[2] (Cobb Decl. ¶ 11; Defs. Ex. 2, Bates # 666-667, 671).

The DMV terminated Liew on February 6, 2015, before her probationary period expired. (Defs. Exs. 1, 5). Cobb, the supervisor who recommended terminating Liew, also recommended

---

[1] The timesheet for December 13 appears to show an 8:00 a.m. sign-in time, with apparent highlighting, but the "comments" indicate "was late." (Defs. Ex. 5, Bates # 665, 662).

[2] The timesheet for January 23 appears to show an 8:00 a.m. sign in time, but with "9:00 am" written over the original entry. (Defs. Ex. 5, Bates # 671).

terminating three other probationary Legal Instrument Examiners for "failing to appear for work on time": Frances Goins, Michael Monk and Jovan Powell. (Cobb Decl. ¶¶ 13-16; Defs. Exs. 6-8).[3]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no disputed genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). A plaintiff must provide more than her conclusory statements to oppose a motion for summary judgment, as "[c]onclusory allegations made in affidavits opposing a motion for summary judgment are insufficient to create a genuine issue of material fact." *Sage v. Broad. Publ'ns, Inc.*, 997 F. Supp. 49, 53 (D.D.C. 1998).

## III. TITLE VII STANDARD

Title VII of the Civil Rights Act provides that employment decisions must be "made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16(a). It also prohibits retaliation against any employee because she "has made a charge,

---

[3] The DMV does not provide the race of the three terminated employees, but the court assumes that they were not of Asian descent and that they had not engaged in any protected activity because Plaintiff refers to them as "comparators" in her brief. (Pls. Br. p. 1).

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

D.C. Code § 2-1402.61 prohibits retaliation against employees who exercise their DCHRA rights, making it unlawful to "retaliate against. . .any person. . .on account of having exercised or enjoyed. . . any right granted or protected" under the DCHRA, and imposes liability on persons who aid or abet DCHRA violations. § 2–1402.61(a). In analyzing a claim of employment discrimination or retaliation under the DCHRA, this court looks to Title VII and its jurisprudence. *Regan v. Grill Concepts-D.C., Inc.*, 338 F. Supp. 2d 131, 134 (D.D.C. 2004).

The court analyzes Title VII claims under the well-established burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006). Under this framework, the plaintiff has the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). In order to do so, the plaintiff must demonstrate that she: (1) is a member of a protected class; (2) suffered an adverse employment action; and (3) the challenged adverse action gives rise to an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802. "To prove unlawful retaliation, a plaintiff must show: (1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice." *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012).

While the plaintiff maintains the burden of persuasion at all times, *Burdine*, 450 U.S. at 253, once she establishes a prima facie case of discrimination, the burden of proof "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the [action in question],'"

*Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (quoting *Burdine*, 450 U.S. at 253). In asserting a legitimate, non-discriminatory justification for the challenged actions, the defendant "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254 (citation omitted). Ordinarily, the burden then shifts back to the plaintiff to demonstrate that the asserted reason is a pretext for discrimination. *Id*. at 253. However, where the defendant provides a legitimate, non-discriminatory explanation for its actions at the summary judgment stage, "the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). Instead, the court's focus is whether the plaintiff produced "sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the [plaintiff] on [a prohibited basis]." *Id*.; *see also Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009).

## IV. ANALYSIS

It is uncontested that the DMV's primary method of measuring performance stems from its goal of minimizing customer wait times. (Cobb Decl. ¶ 7).[4] This is especially important in

---

[4] Although Liew submitted an affidavit in response to the DMV's summary judgment motion, she did not respond to the DMV's Statement of Material Facts. Accordingly, this court may treat those facts as uncontested, Fed. R. Civ. P. 56(e)(2); LCvR 7(h)(1), and the court will do so, except to the extent Liew's affidavit contradicts the DMV's asserted facts.

In addition, Liew's three and one-half page response to the summary judgment motion contained few citations to the record and, in two instances, the cited material was not placed into the record, although Liew's attorney noted, "(to be attached, technical difficulty)." (*See* Pls. Br. at pp. 2-3).

the mornings, when Liew's shift began, "because many morning customers come to the DMV before heading to work." (Cobb Decl. ¶ 7). In light of these considerations, the DMV asserts it terminated Liew because she had been warned that she would be terminated if she continued to arrive late for work, but she failed to heed this warning. (Cobb Decl. ¶¶ 8, 12). Because the DMV has offered a legitimate, non-discriminatory reason for the termination, the burden shifts to Liew to proffer evidence that the DMV's stated reason for her termination was a pretext for discrimination or retaliation.

Liew submitted an affidavit with her response to Defendant's motion in which she admits that management spoke to her about her attendance. (Liew Aff. p. 1). In her deposition, she admitted that she was verbally warned about her tardiness "one or two times," the first time as early as August 2014. (ECF No. 14-2, Pls. Dep. p. 89). Moreover, she does not dispute that she was late and the DMV marked her AWOL on November 12. (*See* Cobb Decl. ¶ 11; Defs. Ex. 2, Bates # 658-660).

Liew asserts that after the November 14 Gaymon incident, however, the DMV began "target[ing] her attendance":

> Whenever I was going to be late for work, I would call or email the manager and notify her of my tardiness. . . . There were times when I confirmed my tardiness or arrived to work a minute or two late I would get written up for AWOL when other employees were also tardy but did not get written up for AWOL. I was also written up for AWOL the day after a weather inclement when I had called and informed the manager of my tardiness due to the road condition . . . . When I was marked for tardy on days when the time was approved, I would still get AWOLED.

(Liew Aff. p. 1).

Viewing the facts in the light most favorable to Liew, the court finds that she has not produced evidence of discriminatory or retaliatory intent. Liew claims that from the beginning

of her employment with the DMV she was treated unfavorably because she was kind to customers, multi-tasked, and was able to obtain employment without a panel interview. (Liew Aff. p. 1). None of these factors pertain to her race.

Liew also admits that she was warned about her tardiness on "one or two" occasions, at least one time <u>prior</u> to the Gaymon incident. (Pls. Dep. p. 89; *see* Pls. Br. p. 1). Further, she does not dispute that she was marked AWOL on November 12, just two days before the Gaymon incident. (*See* Cobb Decl. ¶ 9; Defs. Ex. 4). Moreover, it is uncontested that, after she engaged in protected activity by complaining about Gaymon, Liew arrived late for work six times, despite receiving prior warnings about her tardiness. She challenges the DMV's response to these late arrivals by alleging in her affidavit that the DMV acted with discriminatory and retaliatory intent by singling her out for tardiness and marking her AWOL, while "other employees were also tardy but did not get written up for AWOL." (Liew Aff. p. 1).

However, Liew failed to introduce any evidence supporting her allegation. While the DMV's timesheets appear to show that other employees arrived late on some days when Liew also arrived late, (*see* Defs. Ex. 2, Bates # 664, 668, 670, 671), there are no records in evidence that show the DMV treated those other employees more favorably. Indeed, there is no testimony or other evidence which might suggest the DMV was biased against Liew in its response to her tardiness or that its stated reason for her termination was pretextual. *See Celotex Corp.*, 477 U.S. at 324 (noting that the party opposing summary judgment must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate *specific facts* showing that there is a genuine issue for trial."); *Mason v. Geithner*, 811 F. Supp. 2d 128, 188 (D.D.C. 2011) (emphasis added), *aff'd*, 492 F. App'x 122 (D.C. Cir. 2012)

(granting summary judgment to the employer where Plaintiff failed, *inter alia*, to identify alleged comparators); *Musgrove v. Gov't of D.C.*, 775 F. Supp. 2d 158, 170 (D.D.C. 2011), *aff'd*, 458 F. App'x 1 (D.C. Cir. 2012) (rejecting discrimination claim where plaintiff testified during her deposition that male colleagues who engaged in the same conduct did not suffer any adverse actions, but did not provide supporting comparator evidence).

While Liew failed to identify any comparators, the DMV produced evidence that it terminated three other probationary Examiners for the same transgressions. Liew argues that the three proffered comparators were not similarly situated, since one of them—Powell—did not come to work at all, and therefore her circumstances were different. (Pls. Br. pp. 1-2). But there is no evidence to support this allegation. With respect to the two remaining comparators, Liew argues that the DMV failed to meet its evidentiary burden because the agency did not (1) explain whether these employees had other negative work histories, (2) disclose the time period in which they were employed, and (3) disclose the extent to which they were late versus absent from work. (*Id.*).

This argument is without merit. According to Cobb, all three employees were terminated for "failing to appear at work on time," rather than for absenteeism (Cobb Decl. ¶ 13), and Liew has not produced any evidence to the contrary. With respect to the time period during which they were employed, the termination letters indicate that the DMV terminated one of the employees during Liew's tenure and terminated the other two within six months of Liew's termination. (Defs. Exs. 6-8). Thus, the DMV has produced evidence that it imposed the same sanction on tardy comparators as it imposed on Liew.

Liew cannot survive summary judgment by simply declaring that the DMV's proof regarding its treatment of comparators is insufficient. Rather, she has the burden of coming forward with evidence from which a reasonable juror could compare the DMV's treatment of her and any comparators. *See Huckstep v. Wash. Metro. Area Transit Auth.*, 216 F. Supp. 3d 69, 83 (D.D.C. 2016) (finding that plaintiff failed to come forward with affirmative evidence "from which a jury could compare [plaintiff's treatment to] her putative comparators"); *Silva v. Cleary Gottlieb Steen & Hamilton LLP*, No. CV 14-2192 (ABJ), 2017 WL 2303908, at *8 (D.D.C. May 25, 2017) (rejecting plaintiff's suggestion that the defendant bore the burden of proof that the comparators were similarly situated). Because Liew has failed to meet this burden, her comparator arguments do not support a finding that the agency terminated her for pretextual reasons.

Next, Liew attempts to establish pretext by contending that her tardiness could not have been problematic because she had received a "great evaluation." (Pls. Br. p. 3). This argument also fails. First, the full impact of Liew's evaluation is unclear because she does not explain the numerical evaluation range: she received ratings ranging from "1" to "3," but it is unclear whether 3 was the highest rating available. Moreover, while her cumulative rating was "3 Valued Performer 2.50," her individual ratings consisted of three "3 (Valued Performer)" ratings, two "1 (Inadequate Performer)" ratings and one "2 (Marginal Performer)" rating. (*Id.*) Given these ratings, it is a stretch to describe her evaluation as "great." Additionally, the evaluation covered Liew's performance from October 2013 through September 30, 2014 (Pls. Ex. 2), which is the time period during which she received the verbal warning about her tardiness, not the time period after she received her first AWOL, or the time period after the Gaymon incident. Thus,

the evaluation does not cover the time period during which she claims she was "targeted" for tardiness.

Liew's response also argues that "all of the AWOLs were generated after the Plaintiff complained about the disparate treatment and nothing being done to Mr. Gaymon." (Pls. Br. p. 3). But the record does not support this statement, and Liew subsequently admits in her response that she "had only one incident of AWOL" before the Gaymon incident. (*Id*. p. 1).

Liew next challenges the record by claiming that the DMV failed to give her the January 22 letter in which it memorialized three offers to adjust her work schedule: "I . . . did not receive any memo or email for the chance to adjust my work shift schedule." (Liew Aff. p. 1; *see* Defs. Ex. 12). Notably, Liew does not claim the agency failed to extend the offer, but instead claims she never received any written correspondence on the issue. Nonetheless, even if the DMV failed to extend the offer and/or failed to give her a copy of the letter, Liew has not presented any evidence that a genuine dispute as to any "material" fact exists. *See* Fed. R. Civ. P. 56. Instead, it is undisputed that she was a probationary employee who received warnings about her tardiness and was marked AWOL prior to the Gaymon incident, then later terminated after she arrived late on six additional occasions. Moreover, she has proffered no evidence that the DMV responded to her tardiness more harshly than it did when non-Asians were tardy or when employees who had not engaged in protected activity were tardy. Accordingly, her claims cannot survive summary judgment.

## V. CONCLUSION

The court finds that Liew has failed to present evidence sufficient to establish that there are genuine issues of material fact regarding whether the DMV discriminated against her based

on her race or retaliated against her for engaging in protected activity.  Therefore, the court will GRANT the DMV's motion for summary judgment.

Date:  September 30, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge